**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

Josue Sales Garcia,

     Petitioner,

     v.                          Case No. 2:26-cv-02276-BCL-atc

CHRISTOPHER BULLOCK,
Field Office Director of U.S. Immigration
and Customs Enforcement, New Orleans
Field Office,

     Respondent.

---

## ORDER DENYING § 2241 PETITION

---

Petitioner Josue Sales Garcia has filed a Petition for Habeas Corpus under 28 U.S.C. § 2241, by which he challenges his detention without a bond hearing. Doc. 1 at 1.

As a preliminary housekeeping matter, the United States Court of Appeals for the Sixth Circuit has held that the "district director"—now the Field Office Director—for the place of confinement is the proper respondent to a Section 2241 petition filed by an alien challenging his confinement. *See Roman v. Ashcroft*, 340 F.3d 314, 320–21 (6th Cir. 2003). Here, that is now Christopher Bullock, Field Office Director for the New Orleans Field Office, United States Immigration and Customs Enforcement. The Clerk is therefore **DIRECTED** to modify the docket to replace Trinity Minter with Christopher Bullock. *See* Fed. R. Civ. P. 25(d). All other respondents are **DISMISSED.**

As to the merits of the Petition for habeas corpus, the Petition (Doc. 1) is **DENIED** for the reasons that follow.

1

## BACKGROUND

Petitioner, noncitizen Josue Sales Garcia, illegally entered the United States approximately 20 years ago. Doc. 1 at 10, 16. Since January 11th, 2026, Petitioner has been in Immigration and Customs Enforcement ("ICE") custody and detained at the West Tennessee Detention Facility in this District. *Id.* at 10. Petitioner alleges that he has not received a bond hearing to which he claims to be entitled by law. *Id.* at 19. Petitioner seeks his release or an individualized bond hearing under 8 U.S.C. § 1226(a). *Id.* at 22.

## LEGAL STANDARD

Section 2241 authorizes a court to issue a writ of habeas corpus when an individual "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). An alien seeking to challenge his detention relating to removal proceedings may in some circumstances seek relief through a Section 2241 petition. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Section 2243 directs the judge entertaining an application for a writ of habeas corpus to "forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. The last clause of Section 2243 imposes "a duty to screen out a habeas corpus petition which should be dismissed for lack of merit on its face," as where "the necessary facts can be determined from the petition itself without need for consideration of a return." *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970).

## ANALYSIS

The Court denies the Petition because Petitioner's claims fail on their merits. The exhaustion doctrine does not bar review of Petitioner's claims, but Petitioner's detention without

2

a bond hearing violates neither the Immigration and Nationality Act nor the Fifth Amendment's Due Process Clause.

## I. Petitioner's Claims challenging application of 8 U.S.C. § 1225.

### A. The Exhaustion Doctrine does not preclude review of Petitioner's claims.

The Supreme Court "long has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). That requirement makes obvious sense when Congress requires exhaustion. It arguably makes less sense when, as in Section 2241, Congress has not done so. Perhaps the so-called prudential exhaustion doctrine—a matter of "sound judicial discretion," *id.*—can be explained as an aspect of ripeness, the idea being that there is no ripe dispute if the Executive Branch has not had its final say. Or perhaps it is a shirking of the federal courts' "virtually unflagging" duty to exercise jurisdiction in cases properly before them. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)).

In any event, both the Supreme Court and the Sixth Circuit have embraced the doctrine, which is thus binding on this Court. *See, e.g.*, *McCarthy*, 503 U.S. at 144; *see also Shearson v. Holder*, 725 F.3d 588, 593–94 (6th Cir. 2013). Exhaustion gives an agency "the opportunity to correct its own mistakes with respect to the programs it administers"; "discourages disregard of the agency's procedures"; promotes efficiency because "[c]laims generally can be resolved much more quickly and economically before an agency"; and "may produce a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quotation marks and citations omitted). At least the first two of those justifications would support a robust, near-ironclad exhaustion requirement, so that parties always must follow the agency's procedures and an agency

3

always has an opportunity to distinguish or correct an earlier, potentially erroneous, decision or policy.

But that is not how the exhaustion doctrine has developed. As relevant here, the Supreme Court has held that exhaustion may not be required where the agency "has predetermined the issue before it." *McCarthy*, 503 U.S. at 148 (internal citations omitted). That exception is in some tension with the idea that exhaustion allows an agency to correct its own purported mistakes, insofar as it allows a party to deprive the agency of the opportunity to correct those purported mistakes if they are reflected in a "precedential" agency decision or binding policy. Such is the case here, where the relief Petitioner seeks is barred by the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I. & N. 216, 2025 WL 2674169 (BIA 2025). The Court agrees that exhaustion would be futile on this record because there is no indication that Respondents would depart from the reasoning of the *Yajure Hurtado* decision (acknowledging that the lack of exhaustion naturally precludes Respondent from providing that indication or at least makes it less likely Respondent will do so).

### B. Under the governing statutes, Petitioner is an "applicant seeking admission" subject to mandatory detention.

Petitioner's statutory eligibility for a bond hearing is determined by whether his detention is governed by 8 U.S.C. § 1225(b)(2) or 8 U.S.C. § 1226(a). Section 1225(b)(2) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). In contrast, Section 1226(a) provides, in relevant part:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--

4

**(1)** may continue to detain the arrested alien; and

**(2)** may release the alien on--

    **(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

    **(B)** conditional parole . . . .

8 U.S.C. § 1226(a)(1)–(2). Petitioner argues that he is entitled to an individualized bond hearing under 8 U.S.C. § 1226(a). Doc. 1 at 16.

The Court disagrees. "Congress defined 'applicant for admission' broadly in Section 1225(a)(1) to include all 'alien[s] present in the United States who have not been admitted.'" *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 504 (5th Cir. 2026); *see* 8 U.S.C. § 1225(a)(1) ("An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.").[1] That definition encompasses Petitioner because he admits that he is present in the United States without ever having been legally admitted. *See* Doc. 1 at 10, 16. The passage of time without apprehension makes no difference. Unless and until Petitioner is granted authorization and lawfully admitted into the United States, he remains an "applicant for admission." As such, the Petitioner's detention during removal proceedings is mandatory under Section 1225(b)(2) because Petitioner is an "applicant for admission."

Petitioner's arguments to the contrary can be categorized into two groups. The first centers on the timing and setting of his detention. Petitioner asserts that Section 1225(b)(2) cannot apply

---

[1] Statutory language underscores the point in providing that "'admission'. . . mean[s], with respect to an alien, the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13) (emphasis added). Until his entry into the United States is lawful, Petitioner remains an "applicant for admission," and thus his detention during removal proceedings is mandatory under Section 1225(b)(2).

5

because he was not "arriving" or "seeking admission" when he was detained "about 1,000 miles from the border, years after he illegally crossed it." Doc. 1 at 16. Petitioner suggests that Section 1225 only applies in the context of "those apprehended at or near the border upon arrival or shortly thereafter." *Id.* at 17. That argument fails because of the broad definition of "applicants for admission" in Section 1225. If Congress had intended Section 1225(b)(2) to apply only to a small subset like arriving aliens near the border, it surely would have done so. *See Buenrostro-Mendez*, 166 F.4th at 504.

Second, Petitioner argues that to subject aliens who are present in the interior of the country without authorization to mandatory detention would render superfluous other parts of Section 1225(b)(2)(A), Section 1226(c), and the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). Doc. 2 at 11. Not so. Section "1226(c) and the Laken Riley Act do not mandate the detention of aliens who otherwise would *not* be subject to mandatory detention, but instead they mandate the *timing* of the detention of certain aliens"—specifically, by providing that those aliens shall be detained following release from an underlying offense. *Gomez v. Daley*, No. 2:25-CV-00150-SCM, 2026 WL 252496, at *6 (E.D. Ky. Jan. 30, 2026); *see also Gomez Hernandez v. Lyons*, No. 1:25-CV-216-H, 2026 WL 31775, at *7 (N.D. Tex. Jan. 6, 2026) ("[T]he [Laken Riley Act] was not meaningless—it narrowed the discretion afforded to any Administration exercising detention authority under Section 1226."). As to the seeming conflict with other portions of 1225(b)(2)(A), an exception to detention involving an "examining immigration officer" does not somehow narrow the scope of the governing rule that detention is mandatory for an "applicant for admission" like Petitioner. Petitioner cannot prevent the Government from detaining him now under the correct statute merely because he successfully eluded apprehension and potential examination by immigration officers when he first crossed the border illegally. Petitioner's anti-superfluity

argument is thus baseless—but even if there were some superfluity that would not justify rewriting the plain text of Section 1225. *See Barton v. Barr*, 590 U.S. 222, 239 (2020).

## II.     Fifth Amendment Due Process

### A. Subjecting Petitioner to mandatory detention as required by a faithful interpretation of Section 1225 does not violate the Due Process Clause.

Petitioner also claims that his detention without a bond hearing violates the Due Process Clause. Doc. 1 at 20. "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citing *The Japanese Immigrant Case*, 189 U.S. 86, 100–101 (1903)). But, when a noncitizen has not been lawfully admitted to the United States, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law" because such noncitizens have "only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138, 140 (2020). This is the result of "the so-called 'entry fiction' theory of immigration law," under which "[a]liens who have not 'entered the United States within the meaning of the law,' i.e., who were never lawfully admitted and do not have leave to remain, are 'still in theory of law at the boundary line,'" *Gonzalez v. Ladwig*, No. 2:26-cv-02017-MSN-atc, 2026 WL 413602, at *11 (W.D. Tenn. 2026) (Norris, J.) (quoting *Kaplan v. Tod*, 267 U.S. 228, 230–31 (1925)), where they have only those rights provided by Congress. *See Thuraissigiam*, 591 U.S. at 140. And, here, Congress did not provide a right to a bond hearing. 8 U.S.C. § 1225(b)(2)(A).

Neither the governing statutes nor the Constitution guarantee Petitioner an individualized bond hearing in connection with removal proceedings. Those claims therefore cannot support the Petition. Accordingly, it is apparent from the application that Petitioner is not entitled to the writ. 28 U.S.C. § 2243.

7

## CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

The Clerk is **DIRECTED TO CLOSE THIS CASE**.

**IT IS SO ORDERED**, this 26th day of March, 2026.

 s/ *Brian C. Lea*
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE